IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOUGLAS RIDER,

       Plaintiff,

   v.

LINCOLN COUNTY SCHOOL
DISTRICT,

       Defendant.

Case No. 6:13-cv-02299-AA
OPINION AND ORDER

---

Daniel J. Snyder
Carl Lee Post
Cynthia J. Gaddis
1000 S.W. Broadway, Suite 2400
Portland, OR 97205
    Attorneys for plaintiff

Kim E. Hoyt
Lucas W. Reese
Garrett Hemann Robertson P.C.
P.O. Box 749
Salem, OR 97308
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant Lincoln County School District moves for summary judgment on plaintiff Douglas Rider's claims pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

In April 1989, defendant hired plaintiff as a maintenance worker. In October 1989, defendant promoted plaintiff to his current position as a lead carpenter. In 2008, plaintiff injured his back in a non-work related incident. He took medical leave and did not file a workers' compensation claim.

On March 18, 2010, plaintiff injured his back again while performing a roofing project for defendant, which he reported to his supervisor, Tim Kaufman, that same day. Plaintiff sought immediate medical treatment. On April 12, 2010, plaintiff completed a workers' compensation report, signed by the supervisor of personnel services in human resources, Silvia Danielson.[1] Ms. Danielson expressed that defendant's director of support services, Richard Belloni, was frustrated with the timing of plaintiff's injury because it coincided with spring break, a time during which the school district engaged in many maintenance projects. According to Ms. Danielson, Mr. Belloni said that he would fire plaintiff if

---

[1] Defendant's insurer, SAIF Corporation ("SAIF"), ultimately granted workers' compensation as to plaintiff's March 2010 injuries.

he could.

In November 18, 2010, plaintiff's doctor, Jerry Flaming, D.O., released him to light duty work with the following restrictions: no climbing ladders, no lifting more than 15 pounds, and no repetitive work involving lower back activity. Pursuant to its written policy, defendant looked for light duty work for that would allow plaintiff to return to work early with these documented work restrictions. Because there was no such light duty work available, Mr. Belloni instructed plaintiff to take medical leave until he could perform all the essential functions of his job. On December 23, 2010, Mr. Belloni responded to plaintiff's inquiry about the requirement that he be 100% capable of performing all job functions before returning to work, explaining "we need a full time employee who can perform the required tasks that the job description calls for." Rider Decl. Ex. 5.

Because he was still experiencing pain, plaintiff consulted a neurosurgeon, Darrell C. Brett, M.D., on February 16, 2011. Dr. Brett took plaintiff completely off work and notified Dr. Flaming that he needed surgery. On March 1, 2011, Dr. Brett provided a note to Mr. Belloni informing him of plaintiff's off-work status and scheduled surgery. Upon receiving this information, Mr. Belloni told plaintiff that he wanted to hire someone new to replace him. Plaintiff sent an email to defendant's employee benefits coordinator, Sharon Rodgers, complaining of discrimination and

Page 3 - OPINION AND ORDER

retaliation in relation to his workers' compensation claim. Ms. Rogers forwarded plaintiff's complaint to Ms. Sholty.

On April 1, 2011, Dr. Brett performed a discectomy on plaintiff and, on April 11, 2011, issued a work release that limited him to lifting no more than five pounds and performing repetitive activity for more than two hours. On May 24, 2011, Dr. Brett increased the amount plaintiff could lift to 25 pounds. On August 31, 2011, Dr. Brett again increased the amount plaintiff could lift to 50 pounds. On September 2, 2011, plaintiff sent a letter to defendant requesting that he be allowed to return to work in light of Dr. Brett's August 31 work release.

Plaintiff returned to work September 6, 2011. He reiterated at that time that he was released to work with the restriction that he could not lift over 50 pounds. Plaintiff explained to Ms. Sholty and Mr. Belloni that he had a disability but could nonetheless perform his job with accommodations. Accordingly, plaintiff requested a lift or the assistance of another employee when he needed to lift over 50 pounds. Mr. Belloni told plaintiff that the these accommodations were unreasonable and requested that Dr. Brett complete a fitness for duty questionnaire, including an assessment of plaintiff's ability to perform certain essential job functions. Plaintiff refused to have Dr. Brett fill out this questionnaire and instead insisted on returning to work with the accommodations he previously requested.

On September 7, 2011, plaintiff wrote a letter to Mr. Belloni and Ms. Sholty stating that he did not think they were making an effort to accommodate his disability. On September 14, 2011, plaintiff presented Mr. Belloni with a new work release from Dr. Brett indicating a permanent work restriction of no lifting or carrying more than 50 pounds. Dr. Brett wrote on the form "try to have equipment available to assist with lifting over 50 pounds." Sholty Decl. Ex. 9. On October 3, 2011, Mr. Belloni informed plaintiff he was going to hire a replacement until he could return to work with no restrictions. Approximately six months later, in April 2012, plaintiff presented Mr. Belloni with another work release from Dr. Brett indicating a permanent work restriction of no lifting or carrying more than 50 pounds.

On May 4, 2012, plaintiff met with Mr. Kaufman, Ms. Sholty, and Mr. Belloni about his need for workplace restrictions. Plaintiff received a list of his duties as lead carpenter that required lifting more than 50 pounds. Plaintiff stated that he could lift over 50 pounds occasionally and could return to full duty work. Plaintiff again requested a lift or help from coworkers, as well as the ability to take occasional breaks beyond those already permitted. Mr. Belloni and Ms. Sholty declined plaintiff's proffered accommodations as unreasonable, pointing out that a lift would be inadequate to assist him with many of the job duties that required lifting more than 50 pounds. Ms. Sholty suggested reducing

plaintiff's hours or pay, or placing him in a lower job classification. Plaintiff rejected these suggestions and instead requested that an ergonomic expert from the Occupational Safety and Health Association evaluate his job tasks and abilities; Mr. Belloni and Ms. Sholty denied this request. On May 8, 2012, plaintiff reported to Ms. Sholty that Mr. Belloni told him "we have accommodated you all this time already and we do not have the man power or money to give you help." Rider Decl. Ex. 10.

In a May 10, 2012, meeting with Mr. Belloni, Ms. Sholty, Mr. Kaufman, and a union representative, plaintiff repeated his request for accommodations. At that time, plaintiff indicated that he was medically stationary with a permanent partial disability. Ms. Sholty requested more involvement from plaintiff's doctor to determine what accommodations were necessary. She again gave plaintiff the list of job duties for Dr. Brett to review, explaining that defendant could not provide accommodations without a specific assessment of job tasks from a doctor.

On May 30, 2012, plaintiff went to Dr. Brett. Based on his review of plaintiff's job tasks, Dr. Brett recommended that plaintiff wear a back brace for support and use common sense to avoid further injury. As such, Dr. Brett wrote a new work release to defendant stating that plaintiff had no workplace restrictions. That same day, Dr. Brett sent another report to SAIF reflecting that plaintiff could perform his current position with the

following restrictions: use common sense and only occasional lifting of more than 50 pounds. He did not furnish a copy of the SAIF report to either plaintiff or defendant.

Plaintiff subsequently provided Mr. Belloni with Dr. Brett's May 30 complete release and stated there was no part of his job that he could not perform. He did not request further accommodations until being assigned a roofing project on September 17, 2012, at which point he informed Mr. Kaufman that his back was hurting and requested assistance. Mr. Belloni and Mr. Kaufman indicated that they did not understand why plaintiff would need accommodation when he had been released to work without restrictions. Mr. Belloni called Ms. Sholty to confirm that the most recent work release did not articulate any limitations.

On September 20, 2012, Ms. Sholty informed plaintiff that he had been mistakenly overpaid for his sick leave and requested repayment of $2,400. On September 21, 2012, plaintiff met with Mr. Belloni and Ms. Sholty, and presented them with a letter stating that he felt threatened. Plaintiff brought a union representative, as well as Dr. Brett's May 30 SAIF report, which he had received from his workers' compensation attorney. Mr. Belloni accused plaintiff of lying about his capacity to work because he interpreted the SAIF report as inconsistent with Dr. Brett's other May 30 report. As a result, Mr. Belloni suspended plaintiff pending an investigation. On September 24, 2012, plaintiff sent a letter to

school superintendent Tom Rinearson complaining of discrimination. Plaintiff returned to work September 26, 2012.

On October 1, 2012, plaintiff met with Ms. Sholty, Mr. Belloni, Mr. Kaufman, and a union representative. Ms. Sholty informed plaintiff that defendant was considering disciplining him for misrepresenting his disability and withholding Dr. Brett's other May 30 report. They told plaintiff to see Todd Lewis, M.D., for a fitness for duty evaluation; the union representative verified that this suggestion was in accordance with the parties' collective bargaining agreement. Thereafter, the investigation was completed, which revealed that plaintiff's actions did not constitute dishonesty; defendant pursued no further action against plaintiff.

Plaintiff then consulted with the Bureau of Labor and Industries ("BOLI") to clarify his legal obligation to provide further medical evidence to defendant. BOLI stated that defendant could require a fitness for duty evaluation if plaintiff were returning from medical leave. Based on this information, plaintiff decided that he did not need to comply with defendant's request for a supplemental medical evaluation. On October 2, 2012, plaintiff sent a letter to Mr. Belloni and Ms. Sholty requesting that they identify the legal authority that required him to provide a fitness for duty questionnaire from his doctor.

On October 4, 2012, Mr. Rinearson notified plaintiff that

Page 8 - OPINION AND ORDER

defendant was looking into his discrimination complaint and again requested a medical opinion regarding his ability to perform certain tasks. On October 10, 2012, plaintiff provided a work release and fitness for duty questionnaire from Dr. Brett, neither of which outlined any restrictions. On October 29, 2012, Ms. Sholty communicated to plaintiff that defendant would not accommodate him unless he provided a medical opinion specifying appropriate restrictions. Nevertheless, on November 5, 2012, plaintiff again requested a lift to hang sheetrock; Mr. Belloni allowed plaintiff to bring a coworker instead. In February 2013, defendant gave plaintiff a form to fill out regarding his need for accommodation. Plaintiff responded that he had already provided sufficient information regarding his disability.

Plaintiff filed a complaint with BOLI on November 29, 2012. On January 30, 2013, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On December 27, 2013, plaintiff initiated this lawsuit, alleging the following claims: (1) workers' compensation retaliation in violation of the Americans with Disabilities Act ("ADA") and Oregon law; and (2) disability discrimination in violation of the ADA and Oregon law.[2] Plaintiff

---

[2] As the parties denote, retaliation and discrimination claims brought under the Oregon statutes identified by plaintiff are construed analogously to the ADA, such that the Court analyzes plaintiff's federal and state theories of liability together. Pl.'s Resp. Mot. Summ. J. 22; see also Shepard v. City of Portland, 829 F. Supp.2d 940, 954 (D.Or. 2011).

continues to be employed by defendant and has not identified any
alleged issues regarding retaliation or discrimination from
November 2012 to the present.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions,
affidavits, answers to interrogatories, and admissions on file, if
any, show "that there is no genuine dispute as to any material fact
and the [moving party] is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). Substantive law on an issue determines the
materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 6 (9th Cir. 1987). Whether the
evidence is such that a reasonable jury could return a verdict for
the nonmoving party determines the authenticity of a dispute.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of
a genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986). If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond
the pleadings and identify facts which show a genuine issue for
trial. Id. at 324.

Special rules of construction apply when evaluating a summary
judgment motion: (1) all reasonable doubts as to the existence of
genuine issues of material fact are resolved against the moving
party; and (2) all inferences to be drawn from the underlying facts

must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Defendant moves for summary judgement under two theories.[3] First, defendant argues that summary judgment is appropriate on plaintiff's discrimination and retaliation claims because he cannot demonstrate the existence of an adverse employment action or pretext. Second, defendant contends that it adequately engaged in the interactive process, such that any breakdown in that process was caused by plaintiff's refusal to furnish the requested medical information.

### I. Retaliation Claim

Where, as here, there is no direct evidence of retaliation,

---

[3] Because plaintiff "does not intend to assert a distinct claim under the ADA for harassment creating a hostile work environment," the court need not address defendant's contentions regarding this issue. Pl.'s Resp. to Mot. Summ. J. 23. Further, to the extent defendant implies that plaintiff's claims are untimely pursuant to the relevant administrative filing periods, its argument is unavailing. See Def.'s Mem. in Supp. Mot. Summ. J. 3 n.2. A BOLI complaint "must be filed no more than one year after the alleged unlawful practice." Or. Rev. Stat. § 659A.820(2). Before bringing an ADA claim in federal court, the plaintiff must file a charge with the EEOC within 180 days of the alleged discriminatory employment conduct; a complaint with the state or local agency must be filed within 300 days of the alleged discriminatory employment conduct. 42 U.S.C. § 2000e-5(e)(1); EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994). Here, the alleged unlawful employment practice occurred September 21, 2012, and plaintiff filed his complaint with BOLI on November 29, 2012, well within the one year statute of limitations. Plaintiff filed his EEOC complaint on January 30, 2013, less than 180 days after the alleged injury.

Page 11 - OPINION AND ORDER

claims under the ADA are governed by the burden-shifting framework
described in McDonnell Douglas v. Green, 411 U.S. 792 (1973).
Pursuant to this framework, the plaintiff must first establish a
prima facie case. Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th
Cir. 2003). If the plaintiff proves a prima facie case, the burden
of production shifts to the defendant to articulate a legitimate,
non-discriminatory reason for the adverse employment action. Id. If
the defendant "articulates such a reason, [the plaintiff] bears the
ultimate burden of demonstrating that the reason was merely a
pretext" for a retaliatory motive. Id. at 1188.

    A. Prima Facie Case

    To establish a prima facie case of retaliation under the ADA,
the plaintiff must demonstrate that: (1) he engaged in a protected
activity; (2) he suffered an adverse employment action; and (3)
there was a causal link between the protected activity and the
adverse employment action. Id. at 1186-87.

    Plaintiff engaged in a protected activity by filing a workers'
compensation claim. Kotlenikov v. Portland Rehab. Ctr., 545
F.Supp.2d 1137, 1140 (D.Or. 2008). Further, plaintiff's suspension
and investigation qualify as adverse employment actions. Brown, 336
F.3d at 1186-87. Finally, the Court finds that a causal link exists
between the protected activity and the adverse employment action.
Initially, defendant does not dispute that this element is met. See
generally Def.'s Rep. Indeed, defendant was aware that plaintiff

Page 12 - OPINION AND ORDER

filed a workers' compensation claim and subsequently suspended him.
Rider Decl. Ex. 13.

Although the time lapse of approximately two years between
these events renders temporal proximity alone insufficient, other
evidence of record supports the existence of causation. Namely,
defendant demonstrated ongoing frustration with plaintiff's injury.
Mr. Belloni accused plaintiff of lying about his disability, made
negative comments about his workers' compensation claim, and stated
that he would fire plaintiff if he could in light of his injury.
CITE. In other words, the record contains numerous instances where
plaintiff feared retaliation based on defendant's explicit conduct,
such that the protected activity and adverse employment action were
connected by a chain of events that spanned continuously over two
year a two year period. Plaintiff established a prima facie case of
retaliation.

### B. Legitimate, Non-Discriminatory Reason

Once the plaintiff evinces a prima facie case, the defendant
must set forth evidence that the rationale behind its challenged
action was not retaliatory. Defendant submitted evidence
demonstrating that the suspension and investigation were intended
to clear up misunderstandings regarding plaintiff's disability
status. See generally Sholty Decl.; Reese Decl. The inconsistency
between Dr. Brett's two May 30, 2012 reports, combined with
plaintiff's refusal to provide a completed fitness for duty

questionnaire, is adequate to establish a legitimate, non-discriminatory reason.

C. Pretext

If the defendant identifies a legitimate, non-discriminatory motive for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the reason offered was pretextual. A plaintiff may establish pretext by showing that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. Brown, 336 F.3d at 1188 (citation omitted). "[S]ummary judgment, though appropriate when evidence of [retaliatory] intent is totally lacking, is generally unsuitable in . . . cases in which the plaintiff has established a prima facie case because of the elusive factual question of intent." Yartzoff v. Thomas, 809 F.2d 1371, 1377 (9th Cir. 1987), cert. denied, 498 U.S. 939 (1990) (citations and internal quotations omitted).

Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, the Court finds sufficient evidence of pretext. Defendant's own investigation supports plaintiff's argument; it revealed that plaintiff's fear "of losing his job, or being transferred to a lower paying job . . . is plausible." Rider Decl. Ex. 17, at 10. This investigation also denoted that defendant's "use of the term 'lying' in reference to [plaintiff] is unfortunate and unwarranted and likely exacerbated

the conflict." Id. Further, Mr. Belloni indicated that he wanted to terminate plaintiff's employment rather than accommodate his workers' compensation injury. Gaddis Decl. Ex. C, at 19. This evidence creates a material question of fact as to whether defendant's purported legitimate, non-discriminatory motive for suspending and investigating plaintiff was pretextual. See Rider Decl. ¶ 16. Defendant's motion for summary judgment is denied as to plaintiff's retaliation claim.

II. Discrimination Claim

Plaintiff alleges unlawful discrimination in three respects: (1) per se discrimination due to defendant's requirement that he be 100% healed before returning to work; (2) failure to engage in the interactive process; and (3) disparate treatment.

A. Per Se Discrimination

Requiring injured employees to be 100% healed constitutes per se discrimination "because such a policy permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation." McGregor v. Nat'l R.R. Passenger Corp., 187 F.3d 1113, 1116 (9th Cir. 1999) (citation omitted). Although plaintiff proffered evidence that defendant made statements that he needed to be 100% healed before returning to work, it is undisputed that he

Page 15 - OPINION AND ORDER

was allowed to return to work with restrictions approximately six months after his surgery and less than ten months after Dr. Flaming's first work release. Rider Decl. Ex. 17, at 4. While not dispositive, the Court also notes that plaintiff continues to work for defendant with a permanent partial disability. Reese Decl. Ex. 1, at 133. Defendant's motion is granted in this regard.

### B. Failure to Engage in the Interactive Process

After an employer becomes aware of an employee's disability, the employer must engage in good faith in an interactive process to determine a reasonable accommodation. U.S. E.E.O.C. v. UPS Supply Chain Solutions, 620 F.3d 1103, 1110 (9th Cir. 2010). This process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." Id. (citation and internal quotations omitted). "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Id. at 1110-11. "[T]he plaintiff bears the initial burden to show the existence of a reasonable accommodation." Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1046 (9th cir. 1999).

It is undisputed that there was direct communication between the parties, but plaintiff and defendant each argue that either could not have proceeded in the interactive process without further

Page 16 - OPINION AND ORDER

cooperation by the other. Plaintiff contends the interactive process failed because defendant refused to provide reasonable accommodations, only offering a lower job classification or decreased wages and hours. Rider Decl. Ex. 17, at 4. In contrast, defendant asserts plaintiff caused the breakdown in the interactive process when he refused to provide the requisite medical documentation regarding what specific work-place restrictions were necessary.

The Court finds that plaintiff failed to meet his initial burden of establishing his need for reasonable accommodation after September 2012, the date of the adverse employment action. See Davis v. Tri-Cnty. Metro. Transp. Dist. of Or., 2014 WL 4425815, *21 (D.Or. Sept. 8, 2014) ("an employee must show an adverse employment action before such liability may arise" for failure to engage in the interactive process) (citations omitted). Defendant repeatedly identified what information was necessary to determine the extent of plaintiff's disability and what accommodations would be appropriate. Defendant also repeatedly provided plaintiff a list of specific tasks and requested that his doctor indicate what he could and could not do. Sholty Decl. Exs. 8, 11-12, 17.

An employee "is not entitled to refuse to provide information that is critical to initiating a meaningful interactive process directed at determining reasonable accommodations for him, and then later protest that he was unfairly deprived of those

Page 17 - OPINION AND ORDER

accommodations." <u>Hayes v. Wal-Mart Stores, Inc.</u>, 781 F.Supp.2d 1080, 1092 (D.Or. 2011). Similarly, an employee cannot refuse to provide reasonable medical documentation of his need for accommodations when such documentation is requested by the employer. <u>Allen v. Pac. Bell</u>, 348 F.3d 1113, 1115 (9th 2003); <u>see also</u> <u>Romero v. City of Santa Clara</u>, 2014 WL 2278628, *16 (N.D. Cal. July 10, 2014) ("Romero cannot now point the blame at [defendant] for denying him reasonable accommodations when he failed to identify any").

The list of job functions defendant provided for plaintiff to have Dr. Brett review was a reasonable attempt to understand plaintiff's need for accommodations. Likewise, defendant's request that plaintiff attend an independent medical examination was also reasonable. Nevertheless, plaintiff did not have Dr. Brett specify which of the listed tasks he could not perform without accommodation and instead provided defendant with a full release to work without restrictions, and he refused to submit to any additional physical evaluations. Sholty Decl. Ex. 13. Under the circumstances, defendant's actions did not violate the ADA. Essentially, plaintiff insisted that he could perform his job without accommodations and, in fact, worked for several month stretches without any issues. The May 30, 2012, full release from Dr. Brett confirmed that plaintiff no longer required accommodations to perform the essential functions of his job. At no

point after May 30, 2012, did plaintiff provide evidence of the existence of any workplace restrictions.

In sum, defendant's multiple requests that plaintiff provide more detailed explanations of how his disability would impact his ability to perform essential job functions constituted a good faith effort to seek reasonable accommodations. Plaintiff's failure to provide responsive information detailing his need for workplace restrictions is fatal to this aspect of his discrimination claim. Defendant's motion is granted as to this issue.

### C. Disparate Treatment

The Mcdonnell Douglas burden shifting framework also applies to disparate treament claims under the ADA. Raytheon Co. v. Hernandez, 540 U.S. 44, 49 (2003).

#### i. Prima Facie Case

"A plaintiff proves a prima facie case of employment discrimination under the ADA by showing that: "(1) he is disabled within the meaning of the ADA; (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." Allen, 348 F.3d at 1114 (citations omitted).

It is undisputed that plaintiff qualifies as disabled under

Page 19 - OPINION AND ORDER

the ADA. In addition, defendant does not assert that plaintiff does not possess the requisite skills, experience, and education to perform the lead carpenter position with or without accommodation; the dispute here is whether plaintiff requires accommodation and if so what kind, not whether he is qualified to perform the essential functions of his job. Reese Decl. Ex. 2; Gaddis Decl. Ex. B. As discussed above, plaintiff's suspension and the investigation into his veracity qualifies as an adverse employment action. Thus, plaintiff established a prima facie case of disparate treatment.

### ii. Legitimate, Non-Discriminatory Reason

Defendant asserts the same legally sufficient legitimate, non-discriminatory reasons in response to plaintiff's disparate treatment claim as denoted in section II(B).

### iii. Pretext

Plaintiff has alleged facts beyond his prima facie case sufficient to establish pretext. Plaintiff's suspension came shortly after he requested accommodations in performing a roofing project and following a meeting where Ms. Sholty and Mr. Belloni accused him of dishonesty. Gaddis Decl. Exs. A-B. There are also multiple instances in the record where Mr. Belloni stated that he would terminate plaintiff if he could in light of his injury. See Reese Decl. Exs. 3, 5, 10. Drawing all inferences in favor of

Page 20 - OPINION AND ORDER

plaintiff, this element is satisfied. Defendant's motion is denied as to plaintiff's disparate treatment claim.

### CONCLUSION

Defendant's motion for summary judgment (doc. 11) is DENIED as to plaintiff's workers' compensation retaliation and disparate treatment claims and GRANTED in all other respects.

IT IS SO ORDERED.

Dated this 24th of February 2015.

_____
Ann Aiken
United States District Judge